24024

In the Matter of Charles E. HOUSTON, Jr., Respondent.

(442 S.E. (2d) 175)

Supreme Court

*T. Travis Medlock, Atty. Gen.* and *James G. Bogle, Jr., Asst. Atty. Gen.,* Columbia, *for complainant.*

*Charles E. Houston, Jr., pro se.*

Heard Feb. 2, 1994.

Decided Mar. 7, 1994.

*Per Curiam:*

This attorney grievance matter arises from the Board of Commissioners on Grievances and Discipline, where the initial Hearing Panel's recommendation was to impose an indefinite suspension, and the Executive Committee's recommendation was to order disbarment. We agree with the Executive Committee's findings of misconduct and the recommendation that Houston be disbarred.

## FACTS

The findings of the Hearing Panel, which were adopted by the Executive Committee, outline a long pattern of various ethical violations. While the Hearing Panel recommended an indefinite suspension, the Executive Committee recommended disbarment, based on the number and gravity of the current complaints and in light of the previous public reprimand issued by this Court in *Matter of Houston*, 271 S.C. 259, 247 S.E. (2d) 315 (1978) (C.J. Lewis dissented recommending an indefinite suspension where Houston failed to promptly pay a settlement check to his client).

The complaints giving rise to this action cover a wide range of ethical violations and are addressed as follows:

### The Walker Matter

Charles E. Houston, Jr., was retained to represent Mrs. Walker, her daughter and grandson after an automobile accident. Complainants agreed to pay Houston a one-third contingent fee. The agreement was not reduced to writing in accordance with Rule 1.5(c), *The Rules of Professional Conduct.* Houston also allowed Mrs. Walker to sign the settlement checks on behalf of her daughter and grandson; however, there was no notification or authorization for her to sign the checks on behalf of her grandson.

During the investigation, Houston produced three unsigned settlement statements and a handwritten assessment of the accounting pertaining to the Walkers. At the hearing, Mrs. Walker testified that she had never seen the three unsigned settlement statements and that the figures on the statements did not agree with Houston's handwritten assessment. Houston further testified that he had taken the settlement money from a different case and paid the family court to satisfy his

past-due alimony.[1] Houston testified that he subsequently used the Walkers' money to pay the client in the different case, and that the attorney fees from yet another case were used to finally pay the Walkers. These acts were the basis for a finding by the Hearing Panel and the Executive Committee of a violation of Rule 1.15 (requirement to hold client funds separate from the lawyers funds and to promptly deliver to the client), and Rule 8.4(d) (concerning conduct that is dishonest and deceitful), *The Rules of Professional Conduct.*

### The Dunbar Matter

Houston was found by both the Hearing Panel and the Executive Committee to have violated Rule 32, of the Supreme Court,[2] in that he failed to properly communicate with his client; neglected a legal matter entrusted to him; and failed to carry out his contract of employment. *See Matter of Leppard,* 272 S.C. 414, 252 S.E. (2d) 143 (1979); DR 6-101; DR 7-101(A)(2). Houston was also found to have improperly split a fee with another attorney in violation of DR 2-107(A).

### The Guess and Rutledge Matters

In both the Guess and Rutledge matters, the Hearing Panel and Executive Committee found that Houston neglected certain legal matters and failed to zealously represent his clients, in violation of DR 6-101(A)(3), and DR 7-101(A). The Executive Committee further found, in the Rutledge matter, that Houston committed misconduct by entering into a business transaction with a client without full disclosure in violation of DR 5-104(A). This Executive Committee finding was premised on evidence of a transaction professed by Houston to be a loan of money from the client to Houston. This "loan," however, was without the knowledge of the client and without a full disclosure of the conflict of interest existing between Houston and his client.

### The VanderKolk Matter

A University of South Carolina psychology professor, Dr. Charles VanderKolk, had been employed by Houston in sev-

---

[1] Houston had been incarcerated twice on bench warrants for failure to pay alimony to his first wife.

[2] The conduct giving rise to this complaint occurred prior to September 1, 1990; therefore, the *Code of Professional Responsibility* is applicable.

eral cases as an expert. Houston failed to pay Dr. VanderKolk's fees, which were already approved by the Workers' Compensation Commission, and failed to communicate with Dr. VanderKolk. The Hearing Panel and Executive Committee both found that this failure to pay was not just a mere matter for the civil courts because Dr. VanderKolk was hired directly by Houston and not Houston's clients. Citing *Matter of Horace A. Smith*, 296 S.C. 86, 370 S.E. (2d) 876 (1988) (failure to pay a court reporter for a transcript held as sanctionable misconduct), the Hearing Panel and Executive Committee found that Houston had an ethical duty to pay Dr. VanderKolk, and therefore violated DR 9-102, and DR 1-102(A)(5) & (6) (conduct prejudicial to the administration of justice which adversely reflects on the fitness to practice law).

### Trust Account Matters

The Hearing Panel found that an audit of Houston's trust accounts disclosed several violations, including the return of checks for insufficient funds and the payment to nonclients from trust account funds. The trust account audit also reflected numerous instances where the accounts showed negative balances, and at least two insufficient funds service charges. Using much stronger language, the Executive Committee concurred in the Hearing Panel's findings and found that all of these occurrences constituted flagrant violations of DR 9-102 which requires the segregation of client funds and maintenance of appropriate records for the accounting of those funds.

### Failure to Cooperate with the Board

Throughout the grievance process, Houston either delayed or challenged the authority of the Board to act. While the Hearing Panel declined to make a finding on this issue, the Executive Committee found that the numerous failures to respond, and the need for the Attorney General to Petition this Court for a Rule to Show Cause, all justified a finding of failure to cooperate.[3] *See Matter of Foushee*, 296 S.C. 182, 371 S.E. (2d) 154 (1988); *Matter of Treacy*, 277 S.C. 514, 290 S.E. (2d) 240 (1982).

---

[3] As a result of Houston's earlier actions, we issued an order dated June 22, 1990, which upheld the authority of the administrative assistant to the Board of Commissioners on Grievance and Discipline to issue subpoenas.

## DISCUSSION

The number and extent of the violations here more than support the imposition of disbarment as the appropriate sanction. In *Matter of Bozardt*, 293 S.C. 95, 359 S.E. (2d) 58 (1987), this Court held that the misappropriation of a client's funds together with the failure to maintain records and render an accounting of those funds was misconduct sufficient to support the disbarment of the attorney. Disbarment was also imposed in *Matter of Watkins*, 301 S.C. 461, 392 S.E. (2d) 786 (1990) where the attorney was guilty of misappropriating a law firm's funds as well as the client's funds.

On the present facts, Houston has failed to comply with even the most basic ethical requirements of his profession. His actions cover a wide range of ethical misconduct extending from a failure to represent his clients zealously to the misappropriation of his client's funds. The allegations and findings cover an extended period of time, and while Houston argues that the Board was "stockpiling" complaints, the sheer number and variety of complaints indicate a long-term pattern of ethical noncompliance.

It is therefore ordered that Houston be disbarred from the practice of law in this State. Houston shall within five days from the service of this Order, surrender his license to practice law to the Clerk of the Supreme Court for cancellation, and file an affidavit with the Clerk within fifteen days of service of this opinion showing that he promptly notified all clients being represented in pending matters and the attorney or attorneys for each adverse party of his disbarment, in full compliance with Rule 413, paragraph 30 *Disciplinary Procedure*, SCACR.

Disbarred.